IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERFORMANCE FOOD GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> VALUED INC. d/b/a FLOYD'S OF LEADVILLE f/k/a FLOYD'S OF LEADVILLE, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) 1:23-cv-03529 |

**COMPLAINT**

1. Plaintiff, Performance Food Group, Inc. ("PFG"), brings this suit to recover damages from unpaid account receivables from Defendant Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("Defendant") based on fees related to vendor agreements with companies acquired by PFG.

**PARTIES**

2. Plaintiff PFG is a Tennessee business corporation with its principal place of business of business at 12500 West Creek Parkway, Richmond, Virginia. PFG is a foodservice distributor with a nationwide network of more than 100 distribution facilities and suppliers across the country. PFG markets and delivers food related products to more than 200,000 locations.

3. Upon information and belief, Defendant Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("Defendant") is a business corporation organized and existing

1

under the laws of the State of Colorado with a principal place of business located at 1101 Popular Street, Leadville, Colorado 80461.

4. Upon information and belief, Defendant is a company that produces and sells Cannabidiol ("CBD") products.

5. This Court has subject-matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship, plaintiff being an Tennessee citizen and Defendant being a citizen of the State of Colorado, and the amount in controversy exceeding $75,000, exclusive of interest and costs.

6. This Court has original jurisdiction over the claims asserted herein based on a vendor agreement executed by both parties that established that any dispute arising from the agreement or purchase order shall be governed by Illinois law without regard to choice of law principles, and each party consents to the exclusive jurisdiction of the state or federal courts in Cook County, Illinois. A copy of the contract is attached here as "**Exhibit F**".

## FACTS COMMON TO ALL COUNTS

7. By virtue of an acquisition in March 2019, PFG acquired Eby-Brown Company, LLC ("Eby-Brown").

8. In September 2021, PFG acquired a Core-Mark International, Inc.

9. Both Eby-Brown and Core-Mark were and are authorized dealers and wholesalers of tobacco products and candy, confections, snacks, toiletries, and other "convenience-store" type products (hereinafter collectively referred to as the "Products") and regularly engaged in the sale and distribution of such Products Nationwide.

10. After the acquisition, Eby-Brown was renamed to Core-Mark North and now functions under the Core-Mark brand.

11. As a result of the acquisition, PFG acquired the rights and ownership of all account receivables of Core-Mark.

12. Defendant is a wholesaler that supplies cannabidiol ("CBD") and related products (collectively, the "CBD Products") for sale throughout the United States.

### Core-Mark Agreement with Defendant

14. On or about May 9, 2019, Core-Mark and Defendant entered into a "Vendor Maintenance Form" which contained, among other things, an indemnification agreement ("IA"), Broad Line Supplier Agreement as well as other terms and conditions for Core-Mark to order CBD products from Defendant (Collectively, the "Core-Mark Agreement"). A copy of the Core-Mark Agreement is attached hereto and incorporated herein as Exhibit "A".

15. As relevant here, the IA stated:

> Seller agrees that it will promptly reimburse [Core-Mark] for all cost involved in any product recall or other market withdrawal of the Products, such cost to include, but not be limited to, the cost of (i) handling and preparing the Products for reshipment to Seller or other designee, (ii) destroying the Products if necessary and (iii) replenishing as a result of the Products; removal, return or necessary destruction. See Exhibit A.

16. As part of the Core-Mark Agreement, Core-Mark is permitted to submit "charge backs" for, among other things, "returned products", "missed/late delivery," "Sort and Segregation" and "new item fees" (collectively, the "Chargeback Fees").

17. **Missed/late delivery fees** pursuant to the Core-Mark Agreement are charged as follows and the following amounts:

   I. Missed Appointment: $350
   II. Late Delivery: $350 after first hour. $50 for every additional ½ hour. Considered missed appointment once 2 hours late.
   III. Late Appointment (delivery after purchase order date): $500. A copy of the Missed/late delivery notice is attached hereto and incorporated herein as Exhibit "B."

18. **Sort and segregation loading/lumping fees** are charged for unloading delivery pallets. Sort and segregation loading/lumping fees are allowed to be charged pursuant to the Core-Mark Agreement as follows and in the following amounts:

   I. $75 for the breakdown of 1-6 pallets
   II. $150 for the breakdown of 7 or more pallets
   III. Additional $50 for pallets that are not straight loaded. A copy of the Sort and segregation loading/lumping fee notice is attached hereto and incorporated herein as Exhibit "C."

19. **New Item fees** are intended to offset the one-time administrative and warehouse cost associated with establishing a new item in a company warehouse. New Item Fees are allowed to be charged pursuant to the Core-Mark Agreement as follows and in the following amounts:

   I. "In and Out" Items (i.e. shippers): $100 processing fee per facility
   II. Replacement Items "pack changes": $75 processing fee per facility
   III. New Item Introduction fee: $500 per item per warehouse ("New Item Fees"). A copy of the New Item Fee notice is attached hereto and incorporated herein as "Exhibit D."

20. Core-Mark ordered numerous CBD products from Defendant.

21. Because of these orders, Core-Mark ordered numerous "new items", which resulted in New Item Fees.

22. Many of the orders made by Core-Mark to Defendant required unloading pallets, resulting in sort and segregation fees.

23. Numerous orders made by Core-Mark to Defendant were delivered late or never delivered, resulting in missed/late delivery fees.

24. There were a number of products that Core-Mark purchased from Defendant that were required to be returned, which resulted in return product fees.

25. Core-Mark notified Defendant of all Chargeback Fees.

26. On or around August 2021, Core-Mark noticed that Defendant owed a substantial

283405174v.1

amount to it for Chargeback Fees, totaling $87,899.05, and demanded that Defendant pay the outstanding balance.

27. A copy of Core-Mark account statement detailing the Chargeback Fees is attached as Exhibit "E."

## Eby-Brown Agreement with Defendant

28. On July 8, 2019, Eby-Brown executed a Vendor Agreement with Defendant to purchase the CBD Products and related services from Defendant (the "EB Agreement"). A true and accurate copy of the EB Agreement is attached as Exhibit "F."

29. The EB Agreement allowed Eby-Brown to submit "Chargeback Fees" from the inventory movement policy, shipment and delivery, pursuant to the EB Agreement.

30. The "**inventory movement policy**" section of the EB Agreement expresses that:

> If Eby-Brown has been purchasing any item from Seller for more than 16 weeks and such item fails to meet the category standard turns criteria established by Eby-Brown from time to time, or fails to sell a minimum of 5 cases per week in any Eby-Brown Plant, then Eby-Brown may exercise the following options:
>
> 1. Return overstocked product to Seller, fright collect, in exchange for a full refund; or
> 2. Send the overstocked product to Reclamation, and Seller will pay Eby-Brown the difference between the Eby-Brown cost and the amount received from Reclamation.

31. The "**shipment and delivery**" section of the EB Agreement provides that:

> Seller must inform Eby-Brown immediately of any failure to ship any order or parts of an order that will fail to meet the requested receiving date. Seller's failure to ship on time may result in Eby-Brown's option to either cancel or reject any order received past the quested delivery date or to hold Seller liable for damages incurred as a result of the Seller's failure to deliver on time. *See* Exhibit F §8.
>
> The "[s]eller is responsible for all claims related to any delivery charges (detention charges, sort and segregate) charged to Eby-

Brown by any carrier contracted by Seller or age of Seller. *See* Exhibit F §9.

32. From September 15, 2021 through January 4, 2022, Eby-Brown ordered CBD Products and services from Defendant.

33. A number of these orders contained CBD Products that were damaged or needed to be returned, subjecting Defendant to Chargeback Fees.

34. Eby-Brown notified Defendant of the Chargeback Fees and bills for the same.

35. The outstanding balance for Eby-Brown's Chargeback Fees totaled $283,799. A copy of the Eby-Brown statement of account is attached as Exhibit "G."

36. On January 31, 2022, Eby-Brown and Core-Mark jointly sent a 10-day demand letter to Floyd Landis of Defendant demanding the outstanding balance of Core-Mark for Chargeback Fees totaling $87,899.05 and the outstanding balance for Eby-Brown's Chargeback Fees totaling $283,799. A copy of the demand letter is attached as Exhibit "H."

37. By virtue of the acquisitions by PFG, the outstanding balances owed to Core-Mark and Eby-Brown by Defendant were acquired by PFG.

38. As such, PFG is collectively owed the balances that Defendant owes to Core-Mark and Eby-Brown.

39. To date, Defendant has not made any payment to PFG for the outstanding balances.

## COUNT I
### (Breach of Contract)

40. Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "39" of the Complaint as if fully set forth herein.

41. Core-Mark and Defendant entered into the Core-Mark Agreement.

42. As part of the Core-Mark Agreement, Defendant agreed to reimburse Core-Mark

6

for reshipment of products and pay the Chargeback Fees.

43. In addition, as part of the Core-Mark Agreement, Defendant received notice about the Chargeback Fees.

44. On or around August 30, 2021, Defendant acknowledged that it had an outstanding balance for the Chargeback Fees.

45. Core-Mark made multiple to demands to Defendant pay the outstanding balance represented by the Chargeback Fees.

46. However, Defendant failed to make any payment.

47. As a result, Defendant has breached the Core-Mark Agreement based on its failure to make a payment pursuant to the Core-Mark Agreement.

48. By virtue of the acquisition of Core-Mark by PFG, the outstanding balance owed to Core-Mark by Defendant was acquired by PFG.

49. As such, PFG is owed the outstanding balance that Defendant owes to Core-Mark for Chargeback Fees totaling $87,899.05, and PFG has been damaged in the said amount, plus interest, reasonable attorneys' fees and costs, as per the Vendor Agreement.

50. Wherefore, on the first count by PFG against Defendant, Plaintiff demands amount to be determined at trial, with said amount being no less than $87,899.05, plus interest pursuant to the Core-Mark Agreement and/or statutory interest and attorneys' fees.

## COUNT II
### (Breach of Contract)

51. Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "39" of the Complaint as if fully set forth herein.

52. Eby-Brown and Defendant entered into the EB Agreement.

53. The EB Agreement allowed Eby-Brown to charge the Chargeback Fees.

7

54. Since September 12, 2021, Defendant accumulated numerous Chargeback Fees per the EB Agreement and has continued to do so until January 4, 2022.

55. Those Chargeback Fees collectively total an outstanding balance of $283,799.

56. Eby-Brown has demanded that Defendant pay this outstanding balance, but Defendant has failed to do so.

57. As a result, Defendant has breached the EB Agreement.

58. By virtue of the acquisition of Eby-Brown by PFG, the outstanding balance owed to Eby-Brown by Defendant was acquired by PFG.

59. As such, PFG is owed the outstanding balance that Defendant owes to Eby-Brown for Chargeback Fees totaling $283,799, and PFG has been damaged in said amount, plus finance charges, interest, reasonable attorneys' fees and costs, as per the EB Agreement.

60. Wherefore, on the second count by PFG against Defendant, Plaintiff demands amount to be determined at trial, with said amount being no less than $283,799, plus interest pursuant to the Eby-Brown Agreement and/or statutory interest and attorneys' fees.

## COUNT III
### (Unjust Enrichment)

61. In the event that it is judicially determined that no contractual relationship exists between the parties, the truth of which is denied, then Defendant has been unjustly enriched by the receipt of payment for its CBD Products, to the detriment of Core-Mark, to which no corresponding benefit was received for its purchase of the CBD Products, given that Core-Mark had to return many of those products to Defendant for a variety of reasons, the products were defective, Core-Mark had to store the products, taking up shelf-space or had to expend time and labor to address these CBD products that had to be stored, returned or could not be sold.

62. Under the circumstances, it would be unjust and inequitable to allow Defendant to

retain said benefits without making fair and reasonable restitution to Core-Mark.

63. By virtue of the acquisition of Core-Mark by PFG, any damages owed to Core-Mark by Defendant and the resulting claims were acquired by PFG.

64. Accordingly, PFG demands *quantum meruit* and restitution from Defendant in the amount of $87,899.05.

65. Wherefore, on the third count by PFG against Defendant, Plaintiff demands amount to be determined at trial, with said amount being no less than $87,899.05, plus interest pursuant to the Core-Mark Agreement and/or statutory interest and attorneys' fees.

### COUNT IV
### (Unjust Enrichment)

66. In the event that it is judicially determined that no contractual relationship exists between the parties, the truth of which is denied, then Defendant has been unjustly enriched by the receipt of payment for its CBD Products, to the detriment of Eby-Brown, to which no corresponding benefit was given for its purchase of the CBD Products, given that Eby-Brown had to return many of those products to Defendant for a variety of reasons, the products were defective, Eby-Brown had to store the products, taking up shelf-space or had to expend time and labor to address these CBD products that had to be stored, returned or could not be sold.

67. Under the circumstances, it would be unjust and inequitable to allow Defendant to retain said benefits without making fair and reasonable restitution to Eby-Brown.

68. By virtue of the acquisition of Eby-Brown by PFG, any damages owed to Eby-Brown by Defendant and the resulting claims were acquired by PFG.

69. Accordingly, PFG demands *quantum meruit* and restitution from Defendant in the amount of $283,799.

70. Wherefore, on the fourth count by PFG against Defendant, Plaintiff demands

amount to be determined at trial, with said amount being no less than $283,799, plus interest pursuant to the Eby-Brown Agreement and/or statutory interest and attorneys' fees.

**PLAINTIFF DEMANDS TRIAL BY JURY**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

Dated: May 31, 2023

s/*Mary Louise Kandyba*
MARY LOUISE KANDYBA
*Attorney for Plaintiff*
*Performance Food Group, Inc.*
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street
Suite 3800
Chicago, IL 60603
(312) 704-0550 (telephone)
Illinois Bar No. 6180752
ML.Kandyba@wilsonelser.com


PETER A. LAURICELLA (*pro hac vice* pending)
KADEEM O. WOLLIASTON (*pro hac vice* pending)
*Attorneys for Plaintiff*
*Performance Food Group, Inc.*
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Great Oaks Boulevard, Suite 228
Albany, New York 12203
(518) 449-8893 (telephone)
Peter.Lauricella@wilsonelser.com
Kadeem.Wolliaston@wilsonelser.com

283405174v.1