# Exhibit A



# Vendor Related Parties

CORE-MARK IS REQUIRED TO COLLECT INFORMATION ON RELATED PARTIES. PLEASE INDICATE IF YOU ARE AWARE IF OWNER OR MANAGEMENT IS RELATED TO ANY CORE-MARK EMPLOYEE OR CUSTOMER THROUGH DIRECT FAMILY OR FINANCIAL TIES.

RELATED PARTIES:

☐ EMPLOYEE, IF SO _____ name(s)

☐ CUSTOMER, IF SO _____ name(s)

⊘ NONE

VENDOR: _____ Floyd's of Leadville

SIGNATURE: _____

COMPLETED BY: ____ Jake Sitler

DEPARTMENT: ____ Executive

DATE: _____ 05.9.2019



# Time of product ownership transfer

Please check one of these boxes

☐ When product arrives at Core-Mark dock.

☒ When product leaves your dock.

Vendor: _____ Floyd's of Leadville

Signature:_____

Date: _____ 05.09.2019

# INDEMNIFICATION AGREEMENT

The undersigned ("Seller") hereby represents, warrants, guarantees and certifies to Core-Mark International, Inc. ("Buyer"), and to any subsidiary, division, affiliate or licensee of Buyer (Buyer and such other persons, collectively, "Vendee") that any and all products sold by Seller to Vendee (the "Products") (i) have been, are and will be produced and furnished in compliance with the provisions of the Federal Fair Labor Standards Act; (ii) have been, are and will be produced in compliance with and have not been, are not and will not be, adulterated or misbranded within the meaning of the Federal Food Drug and Cosmetic Act of 1938, as amended, and the regulations promulgated thereunder (the "Act") or the pure food and drug laws or ordinances of any state, province or city to which the Products are shipped by Seller, and have not been, are not and will not be articles which may not be introduced into interstate commerce under the Act; (iii) if the Products contain a color additive, said color additive has been, is and will be from a batch certified by the Secretary of Health, Education and Welfare, as required by the Act (iv) have not been, are not and will not be misbranded hazardous substances or banned hazardous substances, and have not been, are not and will not be in a misbranded package within the meaning of that term in the Federal Hazardous Substance Labeling Act or the Consumer Product Safety Act, (v) have not, are not and will not be misbranded hazardous substances within the meaning of the Federal Child Protection and Toy Safety Act; (vi) have been, are and will be properly labeled as to contents as required by applicable regulations of the Federal Trade Commission; (vii) have been, are and will be placed in packages that reflect true net weight, measure, contents and size pursuant to applicable federal, provincial and state requirements; (viii) have been, are and will be in compliance with all applicable federal, provincial, state and local laws, regulations and other legal requirements, including but not limited to those related to health, safety, labeling, flammability and price discrimination; and (ix) have been, are and will be good and merchantable and fit for the purposes for which they are sold.

Seller agrees that it will promptly reimburse Vendee for all costs involved in any product recall or other market withdrawal of the Products, such costs to include, but not be limited to, the cost of (i) handling and preparing the Products for reshipment to Seller or other designee, (ii) destroying the Products if necessary and (iii) replenishing inventory as a result of the Products' removal, return or necessary destruction.

Seller agrees, in addition to any other rights or remedies of Vendee, to defend (with counsel approved by Vendee), indemnify, and hold Vendee, along with any of Vendee's officers, directors, stockholders, owners, members, employees, agents, consultants, representatives, customers, successors, transferees and assignees (Vendee and such other persons, collectively the "Vendee Indemnitees"), harmless from (i) any and all written or oral demands for monetary or non-monetary relief, including but not limited to any lawsuit, demand for arbitration, investigation or administrative proceeding (each, a "Claim"), as well as (ii) any and all obligations, liabilities, damages, settlements, losses, fines, penalties, deficiencies, judgments costs, expenses (including, without limitation, reasonable attorneys', accountants' and

investigators' fees and disbursements), including for any property damages, personal injuries, illnesses or deaths (collectively, "Damages") to the extent arising from, relating to or associated with any one or more of the following: (a) any allegation or finding of a violation or infringement of any patent, trademark, copyright, trade name, service mark, process, other form of identification or contractual or other rights of any third parties arising from the purchase, use or sale by Vendee Indemnitee of the Products; (b) any allegation or finding of any breach of any representation, warranty, guarantee or certification to Vendee; (c) any aspect of the manufacture, production, processing, packaging, storage, distribution, sale or handling of the Products, including, without limitation, any Damages relating to any sale, manufacture, handling, distribution, marketing, any Product that is a cigarette, cigar, electronic cigarette, personal vaporizer or electronic nicotine delivery system product; (d) any complaint, claim or legal action whatsoever, whether foreseen or unforeseen, alleging Damages, resulting from the purchase, use, consumption or exposure to any of the Products, including, without limitation, any Product that is a cigarette, cigar, electronic cigarette, personal vaporizer or electronic nicotine delivery system product; and (e) Damages relating to or resulting from Seller's negligence or willful misconduct.

Seller agrees to pay Vendee Indemnitee, upon demand, the amount of any Damages to which such Vendee Indemnitee may become entitled by reason of the provisions of this agreement, such payment to be made in immediately available funds.

Seller acknowledges and agrees that the commitments and obligations made by Seller in this agreement were necessary in order to induce Vendee to purchase Products from Seller and that Seller has received good, valuable and sufficient consideration in exchange for such commitments and obligations.

This agreement shall be governed by, and construed in accordance with, the laws of the State of California, without regard to its choice of law provisions. The obligations under this agreement shall continue in effect indefinitely.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Seller has caused this agreement to be executed by its duly authorized representative as of the date stated below.

SELLER:

Floyd's of Leadville
--------------------
Printed Name of Seller

Address of Seller:

1101 Poplar Street Leadville, CO 80461

By: _____
Name: Jake Sitler
Title: Director of Business

Date: _____05.09.2019_____

# Broad Line Supplier Agreement

If Vendor, either in connection with (a) a change in its approach to the distribution of its products or (b) a change in control of Vendor, either through a merger, a sale of the outstanding capital stock of Vendor or a sale of all or substantially all of the assets of Vendor, either changes its primary method of distribution to convenience stores to a solution other than one that relies on a broad line supplier, or in any way materially affects Core-Mark's ability to distribute Vendor's products, Vendor shall owe Core-Mark an amount equal to the sum of three (3) years of Core-Mark's Net Sales Income ("NSI") attributable to such Vendor, calculated based on the average amount of NSI attributable to such Vendor during the prior rolling twelve (12) month period, or if Core-Mark has distributed such Vendor's products for less than twelve (12) months, the amount of NSI attributable to such Vendor in the most recent month that has fully elapsed, which amount shall then be increased by 20% and multiplied by (36) thirty-six months.

VENDOR:

Vendor (Vendor's Name)  **Floyd's of Leadville**

Authorized Signer (Print)  **Jake Sitler**

Title (Authorized Signer)  **Director of Business**

Signature (Authorized Signer) _____

Date:  **05.9.2019**



