# Exhibit F



## *Delivering Solutions Daily*

### Vendor Agreement

This Agreement is entered into by and between Eby-Brown Co., LLC ("Eby-Brown" or "Purchaser") and __Valued Inc. dba Floyd's of Leadville__ ("Seller") effective, July 8th_____, 20 19____.

**Purchase and Sale**

1. <u>General</u>
This Agreement represents the understanding of Eby-Brown LLC, and the Seller with respect to all goods, materials, services and other items purchased by Eby-Brown from the Seller (the "Goods"). Each purchase order issued by Eby-Brown to Seller for the purchase of Goods ("Purchase Order"), whether issued hereafter or pending on the date hereof, shall be governed by the terms of this Agreement, the terms of the Purchase Order as submitted by Eby-Brown and the terms of any applicable marketing, promotional, rebate or incentive program approved by Eby-Brown in writing (whether prior to, on or after the date hereof) (a "Program"). However, to the extent any terms and conditions in a Purchase Order or a Program conflict with the terms contained in this Agreement, this Agreement will supersede the Purchase Order or Program and govern the relationship between the Purchaser and Seller with respect to such Goods unless express reference to such conflict is made by Purchaser in the Purchase Order or Program. Any term or condition proposed by Seller inconsistent with or in addition to the terms and conditions contained herein or in a Purchase Order as submitted by Purchaser shall not be binding on Purchaser unless expressly agreed to in writing by Purchaser. The obligations of Seller to make deliveries hereunder are of the essence of this Agreement. Seller, acting as an independent contractor, warrants and represents that it has the full power to accept and perform all terms and conditions of this Agreement. Seller agrees to continue to be responsible for all materials covered by this Agreement, and that risk of loss of the materials covered hereby shall not pass until such materials have been delivered and accepted by Purchaser. Purchaser shall not be obligated to pay for any Goods delivered in excess of the quantity specified in a Purchase Order.

2. <u>Order Placement and Acceptance; Etc.</u>
Seller agrees to provide written or electronic notice indicating acceptance or rejection (to include the reason) of each order within 24 hours of receipt of the order. If no acceptance or rejection of the order is received within such period, then the order will be considered to have been accepted by Seller.

Any failure by Seller to provide correct information, including pricing information, may result in a fee being assessed by Purchaser against Seller.

3. <u>Order Changes and Cancellations</u>
Eby-Brown may change or cancel an order any time prior to the Seller's shipment of that order. Eby- Brown will have no liability for these changes or cancellation.

4. <u>No Minimum Commitment</u>
Eby-Brown is not obligated to order any particular type or quantity of Goods from Seller, it being understood that Eby-Brown may choose to order no Goods from Seller and Eby-Brown may purchase goods of the type sold by Seller from one or more other suppliers. Seller will not be obligated to accept or fill any order placed by Eby-Brown that does not meet minimum order quantities in place by Seller.
However, If Eby-Brown desires to order Goods from Seller and if Seller's order requirements exceed Eby- Brown's average inventory movement minimums, then Eby-Brown may assess and Seller is required to pay an additional storage

***Naperville, IL***
***1415 W. Diehl Road, Suite 300N, Naperville, IL 60563***
***Tel: 630.778.2800  Toll Free: 800.553.8249***
***www.Eby-Brown.com***



fee associated with carrying this additional inventory.

5. Pricing Match
Seller agrees that if it offers a lower price or better terms on any of its products to another person or entity, then Seller will notify Eby-Brown, all new orders shall be at the lower price or on the better terms, all pending orders and inventory shall be changed to reflect the lower price or better terms and Seller shall issue Eby-Brown a credit, reflecting the adjustment in price, for all outstanding invoices and all items then in Eby-Brown inventory.

6. Price Change Notification; Electronic Date Platform
Seller agrees to provide no less than 10 days notification of price changes for commodity type items. Seller agrees to provide 60 days notification for all other price changes. Seller shall submit all notices of price changes on Eby-Brown's price change form.

Seller agrees that as Eby-Brown expands its electronic data platform that Seller will conform with all data format requests.

7. Deal Changes
Seller is required to provide written notice of all deal changes, such as changes to promotional programs, 30 days in advance of the change start date.

## Shipments and Delivery

8. Delivery Time
Seller must inform Eby-Brown immediately of any failure to ship any order or parts of an order that will fail to meet the requested receiving date. Seller's failure to ship on time may result in Eby-Brown's option to either cancel or reject any order received past the requested delivery date or to hold Seller liable for damages incurred as a result of the Seller's failure to deliver on time.

9. Delivery Charges
Seller is responsible for all claims related to any delivery charges (detention charges, sort and segregate) charged to Eby-Brown by any carrier contracted by Seller or agent of Seller.

10. Inspection and Acceptance Procedures
Seller must provide Eby-Brown sufficient time to check-in any products. Eby-Brown will not be responsible for shortages or damages at delivery for any products picked up from Seller. Eby-Brown will not be responsible for inspecting and reporting shortages, overages, or damage unless a full check-in has taken place at an Eby-Brown plant. Eby-Brown will not be required to inspect product before reselling them.

Eby-Brown may reject any products that do not meet the applicable product specifications. This right of rejection will extend to products returned by Eby-Brown customers. Eby-Brown will either return the product, freight collect, or hold the products for Seller to pick-up. Eby-Brown will bill Seller for all reasonable costs associated with this product, including transportation and handling costs.

If Eby-Brown's approval rights are to be limited in any way, it is the responsibility of Seller to obtain Eby-Brown's written consent to such limitations, either on the front of a specific Purchase Order, or in a separate, written agreement,



signed by Eby-Brown.

11. Packaging and Labeling

All Goods shall be packaged and labeled in accordance with applicable law and industry standards, bearing all applicable content and expiration information.

**Overstocks/Returns and Reclamation**

12. Inventory Movement Policy

If Eby-Brown has been purchasing any item from Seller for more than 16 weeks and such item fails to meet the category standard turns criteria established by Eby-Brown from time to time, or fails to sell a minimum of 5 cases per week in any Eby-Brown plant, then Eby-Brown may exercise the following options:

1. Return overstocked product to Seller, freight collect, in exchange for a full refund; or
2. Send the overstocked product to Reclamation, and Seller will pay Eby-Brown the difference between the Eby-Brown cost and the amount received from Reclamation.

In the event that an item(s) in distribution is discontinued by Eby-Brown it will be the responsibility of the Seller to address the liquidation of that item and fully compensate Eby-Brown for the cost of the discontinued Goods.

Additionally, if during the course of business the Seller or Eby-Brown dissolves their business relationship, or the account falls into a negative balance with Eby-Brown for a period of 90 consecutive days, the Seller will be responsible to address all open receivables with Eby-Brown in the form of a check delivered to Eby-Brown upon demand by Eby-Brown. Those receivables would include but are not limited to, monies owed to Eby-Brown associated with advertising expenses, rebate incentive programs, customer rebate programs, reclamation, pending and returned merchandise, as well as any other open receivable matters.

13. Reclamation Disposition Agreement

Eby-Brown will process retailer returned unsaleables through our third party reclamation center. The unsalable products will be processed based on the reclamation procedure selected by Supplier on the Eby-Brown Reclamation Form (432).

**Payment Terms**

14. Invoice Payment Policy

Eby-Brown makes payment on merchandise vendor invoices according to the following guidelines:

1. Terms period begins with the date that product is received into the Eby-Brown plant unless indicated otherwise on the purchase order as submitted by Eby-Brown or agreed to in writing by the Executive Vice President of Merchandising of Eby-Brown.
2. Eby-Brown has a weekly payment cycle and, for purposes of determining eligibility for early payment discounts and all other purposes, an invoice will be treated as having been paid on the Monday of the week in which the check is dated if such invoice is paid by check or on the date the ETF transfer is initiated if such invoice is paid by EFT.



*Delivering Solutions Daily*

3. All cash discounts will be calculated based on gross invoice amount, prior to deductions for any deals and allowances.

15. Setoff Rights

Eby-Brown may set off any amount owed by Seller to Eby-Brown against any amounts owed by Eby- Brown to Seller and, if Eby-Brown determines that any adverse event has occurred which substantially impairs Seller's ability to continue to perform its obligations, Eby-Brown may suspend and withhold payment of any obligations due Seller to cover any anticipated debit balance with Eby-Brown. If Eby-Brown determines that current ongoing volumes will not support a deduction for amounts owed by the Seller, Seller shall, upon demand by Eby-Brown, issue a check to Eby-Brown to satisfy amounts owed by Seller. If payment by Eby-Brown is delayed in accordance with this Agreement, Seller acknowledges that Eby-Brown is not in default as the result thereof, no discount terms previously negotiated with Eby-Brown will be lost, revoked, denied or reduced and Eby-Brown will continue to enjoy such negotiated discounts to such extent as if payment were made within the time period necessary to obtain them.

16. Post Audit

While reserving the right, in extreme cases, to invoke the Universal Commercial Code statute of limitations of four years on merchandise claims, Eby-Brown's policy on time is currently FMI (Food Marketing Institute) guidelines on deductions. This guide suggests that all claims be resolved within two years after the year of transaction.
Eby-Brown applies the FMI guideline of two years plus the year of transaction to all suppliers.

## Liabilities

17. Warranty

Seller expressly warrants that all Goods shall: (a) conform to any and all final specifications, drawings, plans, instructions, samples or other description, whether expressed or implied, furnished by Purchaser or by Seller, as applicable, (b) be fit and sufficient for the purpose(s) for which they were manufactured and sold, and if Seller knows or has reason to know of any other particular purpose for which Purchaser intends to use such Goods, the Goods will be fit for such particular purpose, (c) be new and merchantable, (d) be of good material and workmanship and free from defects, whether latent or patent; and (e) be free from all liens, claims of third parties and encumbrances. Seller further warrants that it has valid title to the Goods covered by this Agreement and has the right and all necessary authority to sell such Goods. The foregoing warranty shall survive Purchaser's inspection, acceptance, use and subsequent dispossession or sale of the Goods. Seller hereby extends to Purchaser all warranties received from Seller's suppliers and agrees to enforce such warranties on Purchaser's behalf. All Sellers' warranties shall run to Purchaser, its successors, assigns, customers and users of Goods sold by Purchaser. Seller agrees to promptly correct all defects in any Goods not conforming to the foregoing warranties, or promptly replace such Goods, without expense to Purchaser, when notified by Purchaser. In the event of Seller's failure to promptly correct or replace such defective or non-conforming Goods, Purchaser may, after reasonable notice to Seller, make such correction or replacement at Seller's expense. The foregoing warranties and remedies shall be in addition to any warranties and remedies of additional scope herein or otherwise provided by Seller to Purchaser or otherwise provided by law, including, but not limited to, any and all warranties provided in the Uniform Commercial Code.

18. Indemnity

Seller will indemnify, defend and hold harmless Purchaser, its managers, members, directors, officers, employees, successors, assigns, customers and users of the Goods, from and against any and all losses, including consequential and incidental damages, expenses, including reasonable attorney's fees, liabilities, claims, judgments, demands, damages,


**Delivering Solutions Daily**

suits or causes of action of any nature whatsoever arising out of or in connection with (1) any breach of the terms, covenants or representations of this Agreement or a Purchase Order, including without limitation a delay in performance thereof, (2) injury (including death) to any persons, occasioned in whole or in part by either or both the acts of or Goods or other materials furnished by Seller, its agents or employees, whether or not other persons shall have contributed to such injury or damage, (3) the failure of the Goods to conform with the specifications therefore or in any way not conform with applicable law, (4) any breach of warranty, express or implied, as to the quality of the Goods, their merchantability, or their fitness for a particular purpose, (5) claims which may arise out of any willful, negligent or omitted act by Seller or its employees or any defect in or other products liability with respect to the Goods and (6) any recall of the Goods, whether ordered by a governmental entity or otherwise, including but not limited to the cost of such item and the associated costs of administering such recall.  Purchaser reserves the right to control, actively participate in or monitor, through its own counsel,   at Seller's expense, any such claim or other such action brought against it. If there is any liability claim, demand or cause of action relating to injury, damage or other matter to which Seller's indemnity relates which is unsettled prior to the time any payment for the materials herein provided for has been made, final settlement between Purchaser and Seller shall be deferred until such liability, claim, demand or cause of action is adjusted or suitable special indemnity acceptable to Purchaser is provided by Seller.

19. Insurance

Seller will maintain at all times while providing Goods to Purchaser, at Seller's own cost and expense, products liability and other insurance coverage of the types and in such amounts as are required by Purchaser per the guidelines below from time to time with a Company that has an A.M. Best Co. rating of (A-) or better. Seller may comply with a required per occurrence or per claim limit with a combination of primary and excess liability insurance policies. The insurance coverage required under this document must be maintained by Seller for a minimum period of two years following any purchase by Eby-Brown or as long as the Goods are still held by Eby-Brown for resale or use whichever is longer.  Seller will deliver to Eby-Brown prior to shipping Goods a Certificate of Insurance listing Eby-Brown as "additional insured." The Certificate of Insurance must identify all deductibles and reductions and standard coverage. Deductible(s) or self-insured retentions on Seller's policies are to be paid by Seller. The Certificate of Insurance must evidence that the stated insurance will not be cancelled (voluntarily or otherwise) unless the insurer provides thirty (30) days advance written notice to Eby-Brown. The policies (in the "Additional Insured" endorsement) must provide that Seller's insurance is primary and there is no right of contribution from Eby-Brown's insurers. In the event of cancellation or expiration of said insurance during the period of time insurance coverage is required under this document, Seller must provide proof of replacement insurance a minimum of thirty (30) days in advance of the effective date of such cancellation or expiration. Failure to provide such proof of insurance will result in payments being withheld by Eby-Brown until such time as said proof of replacement insurance is received.

- E-cigarette, vapor and commissary food vendors are required to provide the coverage with limits no less than $10,000,000 per occurrence and $10,000,000 for aggregate.
- All non e-cigarette, vapor and non-commissary food vendors are required to provide the coverage with limits no less than $5,000,000 per occurrence and $5,000,000 for aggregate.

Vendor must disclose if their Umbrella self-insured retention or deductible is at or in excess of $1,000,000.

20. Proprietary Rights

Seller warrants that manufacture or use of the Goods covered by this Agreement and the sale or offer for sale of such Goods will not infringe any United States or foreign patent, copyright or trademark or any contract or other right of either Seller or any third party. Seller agrees to defend, indemnify and hold harmless Purchaser, its members,

**Naperville, IL**
**1415 W. Diehl Road, Suite 300N, Naperville, IL 60563**
**Tel: 630.778.2800  Toll Free: 800.553.8249**
**www.Eby-Brown.com**



managers, directors, officers, employees, successors, assigns, customers and users of the Goods, from and against any damages, claims, liabilities, losses, costs and expenses (including, without limitation, court costs, attorneys' fees, profits, penalties or punitive damages) arising out of or relating to any actual or alleged infringements of such patent, copyright, trademark or other right, or any unfair competition resulting from similarity in design, trademark or appearance, by reason of the manufacture, use, sale or offer of sale of the Goods covered by this Agreement. Purchaser reserves the right to control, actively participate in or monitor, through its own counsel, at Seller's expense, any such claim of infringement or other such action brought against it.

21. Compliance with Federal Law

Seller hereby guarantees that the articles comprising each shipment or other delivery of Goods now or hereafter made by Seller to Purchaser as of the date of such shipment or delivery:

    1. Are not adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act, as amended, or within the meaning of applicable State laws or Municipal ordinances in which the definitions of adulteration and misbranding are substantially the same as those contained in the above Act, and not an article which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; and:

    2. Are produced under and in full compliance with all applicable FDA, USDA & FSIS regulations, including the Food Safety Modernization Act of 2010.

22. General

Except as herein otherwise provided:

    1. This Agreement is a complete and exclusive statement of the terms of the contract between the parties.

    2. No course of prior dealings between the parties or oral agreements shall in any way supplement, explain or modify any of the terms herein.

    3. The terms of this Agreement can be modified or rescinded only by an agreement in writing signed by both Purchaser and Seller or their duly authorized agents.

    4. The total price of the Goods or products includes the payment by Seller of any and all taxes under any existing or future law or regulation, upon or with respect to the sale, purchase, manufacture, delivery, storage, processing, use, consumption, or transportation of any of the materials or services covered hereby, and Purchaser shall in no way be liable or obligated to reimburse Seller therefor.

    5. Time is of the essence of this agreement.

23. Inspection

At Eby-Brown's request, Seller shall provide any third party audit or any Global Food Safety Initiative (GFSI) certification or other internationally-recognized food safety audit certification for any of seller's manufacturing facilities. Eby-Brown recommends but does not require Seller to have completed an audit certification program. Eby-Brown may, with reasonable notice, audit or inspect any of Seller's facilities used to manufacture Goods.

24. Waiver

Either party's failure to insist on compliance by the other party with this Agreement shall not waive any other terms, conditions, rights, remedies, breaches or defaults. No modification of this Agreement or a Purchase Order shall be binding unless made in writing and signed by each party.

25. Controlling Law and Jurisdiction

Any dispute between Purchaser and Seller arising from this Agreement or any Purchase Order or Program shall be

**Naperville, IL**
**1415 W. Diehl Road, Suite 300N, Naperville, IL 60563**
**Tel: 630.778.2800  Toll Free: 800.553.8249**
**www.Eby-Brown.com**



**Delivering Solutions Daily**

governed by Illinois law without regard to choice of law principles. Any dispute between Purchaser and Seller arising from this Agreement or any Purchase Order or Program shall be initiated, and each party consents to the exclusive jurisdiction of the state or federal courts in Cook County, Illinois. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, CLAIM, ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR A PURCHASE ORDER OR PROGRAM.

26. Gifts and Gratuities

Eby-Brown's policy for all employees is that they are not allowed to accept any gifts, trips, cash or samples for personal benefit.

EBY-BROWN CO., LLC

*[signature]*
SIGNATURE

VP of MERCHANDISING
TITLE

NGEDOCS: 010776.0000:1842020.4

Valued inc. dba Floyd's of Leadville
YOUR COMPANY NAME

*[signature]*
SIGNATURE

**Director of Business**
TITLE