# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PERFORMANCE FOOD GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>VALUED INC. d/b/a FLOYD'S OF LEADVILLE f/k/a FLOYD'S OF LEADVILLE, INC.<br><br>Defendant. | Case: 1:23-cv-3529<br>Judge Charles Kocoras<br>Magistrate Judge Weisman |

# MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2), Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("FOL") hereby moves to dismiss Plaintiff Performance Food Group, Inc.'s ("Plaintiff PFG") complaint. As grounds therefor, FOL states as follows.

## I. INTRODUCTION

This is an action concerning the wholesale distribution of consumer retail products. FOL sells CBD-infused consumer products through both retail and wholesale channels. FOL entered into two separate distribution contracts (respectively, the "Eby-Brown Contract" and the "Core-Mark Contract") with non-parties Eby-Brown Company, LLC and Core-Mark International, Inc. ("Non-Parties Core-Mark and Eby-Brown") to sell its products in convenience stores. It is alleged that FOL breached those contracts by failing to pay various add-on charges for the distribution of FOL's products.

But there is a problem with that allegation: Plaintiff PFG is not a party to either one of the contracts. Instead, Non-Parties Core-Mark and Eby-Brown are the distributors that FOL entered into contracts with. Plaintiff PFG does not allege that those contracts were assigned to it, and Plaintiff PFG does not allege that Non-Parties Core-Mark and Eby-Brown assigned the rights to collect any accounts receivable to Plaintiff PFG. Instead, Plaintiff PFG alleges that it acquired Non-Parties Core-Mark and Eby-Brown, and therefore, Plaintiff PFG has the right to sue FOL.

This allegation overlooks a basic distinction in corporate and commercial law: the acquisition of a company is different than the acquisition of all of a company's assets. Plaintiff PFG's acquisition of Non-Parties Core-Mark and Eby-Brown was an acquisition of the companies and not their assets. Those two companies continued and continue their corporate existence and continue to hold the rights to the contracts at issue. Plaintiff PFG, therefore, is not the real party in interest and has failed to state a claim.

And even if Plaintiff PFG had established that it has the rights to enforce the alleged obligations and that it is the real party in interest, there is yet another problem. Claims I and II are not covered by either of the contracts. The claims are for various add-on charges that are not required by the contracts.

Last, FOL disputes that the Court has personal jurisdiction over FOL. The only basis for personal jurisdiction raised in the complaint is a forum selection clause for claims arising out of Eby-Brown Contract. The claims belonging to Eby-Brown do not arise out of that contract and there is no basis for personal jurisdiction arising out of FOL's business relationship with Core-Mark.

Accordingly, FOL respectfully asks the Court to dismiss this action for failure to state a claim for not being prosecuted in the name of the real party in interest and for lack of personal jurisdiction.

**II.     SUMMARY OF RELEVANT FACTS**

The following are the relevant allegations from Plaintiff PFG's complaint and treated as though true solely for the purposes of this motion:

1. Plaintiff PFG is a Tennessee business corporation with its principal place of business of business at 12500 West Creek Parkway, Richmond, Virginia. PFG is a foodservice distributor with a nationwide network of more than 100 distribution facilities and suppliers across the country. PFG markets and delivers food related products to more than 200,000 locations. (Compl. ¶ 2)

2. Upon information and belief, Defendant Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("Defendant") is a business corporation organized and existing under the laws of the State of Colorado with a principal place of business located at 1101 Popular [sic] Street, Leadville, Colorado 80461. (Compl. ¶ 3).

3. This Court has original jurisdiction over the claims asserted herein based on a vendor agreement executed by both parties that established that any dispute arising from the agreement or purchase order shall be governed by Illinois law without regard to choice of law principles, and each party consents to the exclusive jurisdiction of the state or federal courts in Cook County, Illinois. A copy of the contract is attached here as "Exhibit F". (Compl. ¶ 6).

4. By virtue of an acquisition in March 2019, PFG acquired Eby-Brown Company, LLC ("Eby-Brown"). (Compl. ¶ 7).

5. In September 2021, PFG acquired a [sic] Core-Mark International, Inc. (Compl. ¶ 8).

6. As a result of the acquisition, PFG acquired the rights and ownership of all account receivables of Core-Mark. (Compl. ¶ 11)

7. On or about May 9, 2019, Core-Mark and Defendant entered into a "Vendor Maintenance Form" which contained, among other things, an indemnification agreement ("IA"), Broad Line Supplier Agreement as well as other terms and conditions for Core-Mark to order CBD products from Defendant (Collectively, the "Core-Mark Agreement"). A copy of the Core-Mark Agreement is attached hereto and incorporated herein as Exhibit "A". (Compl. ¶ 14).

8. On July 8, 2019, Eby-Brown executed a Vendor Agreement with Defendant to purchase the CBD Products and related services from Defendant (the "EB Agreement"). A true and accurate copy of the EB Agreement is attached as Exhibit "F." (Compl. ¶ F).

9. On January 31, 2022, Eby-Brown and Core-Mark jointly sent a 10-day demand letter to Floyd Landis of Defendant demanding the outstanding balance of Core-Mark for Chargeback Fees totaling $87,899.05 and the outstanding balance for Eby-Brown's Chargeback Fees totaling $283,799. A copy of the demand letter is attached as Exhibit "H." (Compl. ¶ 36).

### III. LEGAL STANDARD

#### A. Standards Applicable To Rule 12(b)(6) Motions.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

### B. Standards Applicable To Rule 17(a)'s Real Party In Interest Requirement.

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "'The rules do not specify any particular mechanism for challenging real party status. However, a person who does not hold a legally enforceable right—and therefore is not a real party in interest—fails to state a claim upon which relief may be granted.'" *Act II Jewelry, Ltd. Liab. Co. v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018) (quoting 1 Federal Reules of Civil Procedure, Rules and Commentary). Accordingly, "[t]he proper time to bring the challenge is on a 12(b)(6) motion." *Id.*

### C. Standards Applicable To Rule 12(b)(2) Motions.

"The plaintiff has the burden of demonstrating the existence of personal jurisdiction over the defendants." *Steel Warehouse v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). "Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper." *Hyperquest, Inc. v. Nugen I.T., Inc.*, 627 F. Supp. 2d 884, 891 (N.D. Ill. 2008) (citations omitted). "It is well established law that [a] federal court's exercise of personal jurisdiction over a non-resident defendant is proper only if a court of the state in which it sits would have such jurisdiction." *Id.* (quotations and citations omitted). Because the limits of the Illinois long-arm statute are coterminous with the federal limits on personal jurisdiction, the questions is whether exercising jurisdiction over Core-Mark's claims against

5

FOL are consistent with the minimum contacts analysis articulated by the Supreme Court in *International Shoe* and its progeny. *Id.* at 891-92.

"The Supreme Court has indicated that courts may exercise one of two sorts of jurisdiction over out-of-state defendants: general or specific." *Id.* at 892. In the absence of general jurisdiction, or continuous and systematic contacts with the forum, "courts may exercise specific jurisdiction, which is limited to cases where the litigation arises out of or is related to [the defendant's contacts with the forum state]." *Id. at 892-93.* In cases of specific jurisdiction, the litigation must "arise out of" or be "related to those contacts" with the subject forum. *Logan Prods. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

## IV. ARGUMENT

Plaintiff PFG has failed to state a claim for two reasons. First, Plaintiff PFG is not the real party in interest because it did not acquire the rights to enforce the contracts and accounts receivable in question. Instead, it acquired two companies who still maintain those rights, if any. Second, Plaintiff PFG's allegations do not state a claim for breach of the contracts at issue. The allegations of the complaint do not relate to any term of the contracts. Additionally, the Court lacks personal jurisdiction over FOL. Accordingly, FOL respectfully requests that the Court dismiss this action.

### A. Plaintiff PFG Is Not The Real Party In Interest.

Plaintiff PFG's claims should be dismissed because Plaintiff PFG is not the real party in interest. "Rule 17(a)'s real-party-in-interest requirement is better described as a codification of the principle that a litigant cannot sue in federal court to enforce the rights of third parties—in other words, a prudential limit on standing." *Act II Jewelry, Ltd. Liab. Co. v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018). Rule 17(a) requires that actions be prosecuted in the name of the "real party in interest", which is "the term used to describe the person who, under the applicable substantive law, holds the substantive rights at issue." *Id.*

6

"It is not enough that a person stands to benefit from the suit; to be a real party in interest, the person must be the holder of the right or claim at issue." *Id.* Accordingly, Plaintiff PFG must establish that it has the right to sue in its own name to enforce the rights arising out of FOL's contractual or other relationship with Non-Parties Core-Mark and Eby-Brown.

Plaintiff PFG is not the real party in interest that holds the legal right to enforce the claims at issue. Plaintiff PFG fails to allege in its complaint that it is the real party in interest because its factual allegations are insufficient and its legal conclusions are incorrect. Plaintiff PFG contends that it acquired Non-Parties Core-Mark and Eby-Brown, and therefore, it now has the rights to enforce the alleged contracts between FOL and Non-Parties Core-Mark and Eby-Brown. These were acquisitions of the companies themselves, not of their assets. While the allegation that Plaintiff PFG acquired Non-Parties Core-Mark and Eby-Brown may be true, the conclusions and inferences that Plaintiff PFG draws from this fact are incorrect. Plaintiff PFG's allegations that it acquired these two companies, and therefore, acquired the rights to collect their alleged accounts receivable, belies a fundamental tenant of corporate and commercial law: there is a difference between acquiring a company and acquiring a company's assets.

Plaintiff PFG incorrectly contends that its acquisition of Non-Parties Core-Mark and Eby-Brown effected the transfer of accounts receivable to Plaintiff PFG. Accounts receivable are assets of a company. *In re Schneider*, 824 N.E.2d 177m, 187 (Ill. 2005). "A purchase of stock in a corporation, however, does not constitute the purchase of the corporate assets, just as a transfer of the stock of a corporation is not a transfer of the property and assets of the corporation itself." *Engel v. Teleprompter Corp.*, 703 F.2d 127, 131 (5th Cir. 1983). In a stock acquisition, the acquired company "emerges from the transaction with the same contractual rights and obligations as it had before the transaction." *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, No. 5589-VCP, 2011 Del. Ch. LEXIS 61, at *41 (Ch. Apr. 8,

7

2011). "Delaware courts have refused to hold that a mere change in the legal ownership of a business results in an assignment by operation of law." *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 88 (Del. Ch. 2013). Consequently, the acquisition of a company's stock alone does not effect the transfer of the company's accounts receivable into the acquiring company.

Here, Plaintiff PFG does not allege that it acquired the assets of Non-Parties Core-Mark and Eby-Brown. Instead, Plaintiff PFG contends that it acquired Non-Parties Core-Mark and Eby-Brown. (Compl. ¶¶ 7-8). From this factual allegation, Plaintiff PFG then draws the legal conclusion that the acquisition of Non-Parties Core-Mark and Eby-Brown caused Plaintiff PFG to acquire the rights to sue FOL. (Compl. ¶¶ 11). Not only is this a conclusory allegation that is "discard[ed] when considering well-pleaded factual allegations", *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 889 (7th Cir. 2017), it is contrary to law. The mere acquisition of ownership of a company does not transfer ownership of the company's accounts receivable to the acquirer. The acquirer owns the acquired company, but the acquired company still owns its assets like contractual rights and accounts receivable.

If the Court has any doubts about the ownership of the alleged claims, Plaintiff PFG's complaint resolves those doubts. As alleged in Paragraph 36, Plaintiff PFG states that "Eby-Brown and Core-Mark jointly sent a 10-day demand letter to Floyd Landis of Defendant demanding the outstanding balance of Core-Mark for Chargeback Fees totaling $87,899.05 and the outstanding balance for Eby-Brown's Chargeback Fees totaling $283,799. A copy of the demand letter is attached as Exhibit 'H.'" (Compl. ¶ 36). This is a confession of the continued existence of both Eby-Brown and Core-Mark and their continued ownership of the claims. Indeed, it is Eby-Brown and Core-Mark who demanded their money, not Plaintiff PFG. This demand was sent *after* Plaintiff PFG acquired these companies (not their assets).

By Plaintiff PFG's own admission, Eby-Brown and Core-Mark want to be paid and continue to exist even after PFG acquired the companies. These should be the plaintiffs, not PFG.

        **B.**        **Plaintiff PFG Fails To State A Claim For Breach Of Contract.**

Assuming Plaintiff PFG has the rights to enforce contracts to which it is not a party and that have not been assigned to it, Plaintiff PFG has failed to state a claim for breach of contract. "To state a claim for breach of contract in Illinois, a plaintiff must plead: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (quotations omitted).[1] While the plaintiff is not required to identify the term of the contract the defendant allegedly breached, "plaintiff must in all events plead sufficient facts to suggest plausibly that a breach of some contractual obligation occurred." *Melnick v. Betfair Interactive*, LLC, 563 F. Supp. 3d 822, 824 (N.D. Ill. 2021).

Here, Plaintiff PFG has attached the contracts at issue and specified precisely what it contends FOL did to breach the contracts. The problem, however, is that the terms that Plaintiff PFG contends that FOL breached are not actually part of the contract. In other words, Plaintiff PFG is alleging that FOL failed to pay amounts that FOL is not contractually required to be paid. A party cannot breach a contract by failing to do something not required by the contract. Plaintiff PFG's breach of contract claims for both contracts are based on extra-contractual requirements that FOL is not contractually required to perform.

///
///
///
///

---

[1] The Core-Mark Contract is governed by California law, which is substantially similar to Illinois law with respect to the elements for a breach of contract. *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009).

### 1. Plaintiff PFG's claims for breach of the Core-Mark Contract are based on extra contractual terms.

Plaintiff PFG is suing FOL for breaching terms of the Core-Mark Contract that are not in the Core-Mark Contract. Plaintiff PFG attached the Core-Mark Contract to the Complaint as Exhibit A. In the Core-Mark Contract, FOL allegedly agreed to:

> promptly reimburse [Core-Mark] for all cost involved in any product recall or other market withdrawal of the Products, such cost to include, but not be limited to, the cost of (i) handling and preparing the Products for reshipment to Seller or other designee, (ii) destroying the Products if necessary and (iii) replenishing as a result of the Products; removal, return or necessary destruction.

(Compl. ⁋ 15; Ex. A). Plaintiff PFG does not claim that there was any "product recall or other market withdrawal of the Products" that FOL sold to Core-Mark. Consequently, Plaintiff PFG has not alleged that FOL breached this term of the Core-Mark Contract.

Rather than allege that FOL breached a term of the Core-Mark Contract, Plaintiff PFG instead alleges that "[a]s part of the Core-Mark Agreement, Core-Mark is permitted to submit 'charge backs' for, among other things, 'returned products', 'missed/late delivery,' 'Sort and Segregation' and 'new item fees' (collectively, the 'Chargeback Fees')." (Compl. ⁋ 16). Then, Plaintiff PFG elaborates on these "Chargeback Fees" and attaches Exhibits B through D as the source of the obligation to pay the Chargeback Fees. It is these Chargeback Fees that Plaintiff PFG is attempting to collect from FOL.

There is a problem with claiming that FOL breached its obligation to pay these Chargeback Fee—the Exhibits that purport to obligate FOL to pay these liquidated damages *pre-date the Core-Mark Contract*. Each one of the exhibits is a unilateral policy established by Core-Mark dated July 9, 2018, and effective August 1 or 13, 2018. (Ex's. B-D). The Core-Mark Contract, however, was allegedly signed on May 9, 2019. (Ex. A). Plaintiff PFG does not offer any allegation that FOL agreed to the allegedly breached terms that pre-date the

10

Core-Mark Contract by almost a year. And importantly, the Core-Mark Contract does not incorporate by reference those memoranda establishing the purported Chargeback Fees. In sum, there is no allegation that FOL agreed to pay these fees, and the alleged obligation to pay these fees is contained in unagreed-to memoranda from the year prior to FOL's contract with Core-Mark. Plaintiff PFG fails to state a claim for breach of the Core-Mark Contract because the breach it complains of is not based on a term in the contract.

### 2. Plaintiff PFG's claims for breach of the Eby-Brown Contract are based on extra contractual terms.

The problems with the Eby-Brown Contract are similar to those with the Core-Mark Contract. Again, Plaintiff PFG alleges that FOL is obligated to pay "Chargeback Fees". (Compl. ¶ 29). To allege a claim for the Chargeback Fees, Eby-Brown cites the "inventory movement policy" and "shipment and delivery" portions of the Eby-Brown Contract. (Compl. ¶¶ 30-31). To summarize these two sections, the "inventory movement policy" relates to whether the product is selling the required minimums, (Comp. ¶ 30), and the "shipment and delivery" section relates to the failure of FOL to ship orders on time. (Comp. ¶ 31). Rather than alleging that FOL either failed to meet the minimum requirements for the inventory movement policy or failed to ship orders on time, Plaintiff PFG alleges something else altogether. Plaintiff PFG alleges that "a number of these orders contained CBD Products that were damaged or needed to be returned, subjecting Defendant to Chargeback Fees." (Compl. ¶ 33). This allegation is a non-sequitur. There is no allegation in the complaint, and no term in the Eby-Brown Contract, that requires FOL to pay Eby-Brown Chargeback Fees because products were either "damaged" or "need to be returned." Indeed, there is no term of the Eby-Brown contract that applies to the Chargeback Fees that Eby-Brown appears to have unilaterally charged FOL without any contractual basis to do so. Without alleging the breach of a term of the actual contract, Plaintiff PFG fails to state a claim for breach of contract.

11

### C. There Is No Personal Jurisdiction Over FOL For These Claims.

Assuming that Plaintiff PFG has the right to bring claims it does not own, or even if Plaintiff PFG moves to substitute plaintiffs, the Court does not have personal jurisdiction over FOL.[2] The only alleged basis for personal jurisdiction over FOL in the State of Illinois is a forum selection clause in the Eby-Brown Contract.[3] [4] (Compl. ¶ 6, Ex. F at 8). Aside from this forum selection clause, there are no factual allegations that the Court has general or specific personal jurisdiction over FOL.

The Court does not have personal jurisdiction over FOL with respect to the Eby-Brown Contract because the claims do not arise out of the limited claims subject to jurisdiction in Illinois as described in the Eby-Brown Contract. The Court does not have personal jurisdiction over FOL with respect to the Core-Mark claims because there is no general or specific jurisdiction over FOL.

#### 1. The Eby-Brown claims are not within the forum selection clause.

The sole basis for Plaintiff PFG asserting the Court has personal jurisdiction over FOL is the forum selection clause in the Eby-Brown Contract. That clause states, in full:

> Any dispute between [Eby-Brown] and [FOL] arising from this
> Agreement or any Purchase Order or Program shall be initiated,

---

[2] FOL recognizes that this challenge to personal jurisdiction may be premature but submits it here so as not to waive any challenge to personal jurisdiction under Fed. R. Civ. P. 12(h)(1) and potentially avoid additional motions practice.

[3] Plaintiff PFG alleges in its complaint that "[t]his Court has original jurisdiction over the claims asserted herein based on a vendor agreement executed by both parties that established that any dispute arising from the agreement or purchase order shall be governed by Illinois law without regard to choice of law principles, and each party consents to the exclusive jurisdiction of the state or federal courts in Cook County, Illinois." (Compl. ¶ 6). This is a half truth. The contract is not executed by both "parties" to this action. It was not executed by Plaintiff PFG at all.

[4] FOL is also concerned that claims arising under the Eby-Brown contract are outside of this Court's subject matter jurisdiction. Eby-Brown, as the real party in interest, is a limited liability company. Since "limited liability companies are citizens of every state of which any member is a citizen", *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003), it is plausible that at least one of the members of this limited liability company is a citizen of the same state as FOL and would destroy diversity jurisdiction.

>and each party consents to the exclusive jurisdiction of the state
>or federal courts in Cook County, Illinois.

(Ex. F. at 8). Accordingly, Eby-Brown and FOL have consented to personal jurisdiction in this Court with respect to claims arising from (1) the Eby-Brown Contract; (2) any Purchase Order; and (3) a Program. None of these claims are present here.

First, Plaintiff PFG's claims do not arise from the Contract. As described in the Complaint and analyzed in Section IV.B.2 above, Plaintiff PFG's claims do not arise out of the Eby-Brown Contract. The claims arise, instead, out of add-on charges that are not provided for or even mentioned in the Eby-Brown Contract. Consequently, the breach of contract claim does not arise from the Eby-Brown Contract and are not within this section of the forum selection clause.

Second, the claims do not arise out of any Purchase Order. Under the Eby-Brown Contract, a Purchase Order is an "order issued by Eby-Brown to [FOL] for the purchase of Goods." (Ex. F at 2). This dispute is not about Purchase Orders. This dispute is about "Chargeback Fees" for CBD Products that were "damaged or needed to be returned." (Compl. ¶ 33-34).

Third, the claims do not arise out of any Program. Under the Eby-Brown Contract, a Program is "any applicable marketing, promotional, rebate or incentive program approved by Eby-Brown in writing . . . ." (Ex. F at 2). Again, this dispute is not about Programs—it is about "Chargeback Fees" for CBD Products that were "damaged or needed to be returned." (Compl. ¶ 33-34).

As such, the claims at issue do not arise from the Eby-Brown Contract, a Purchase Order, or a Program. FOL has not otherwise consented to personal jurisdiction in Illinois.

///
///
///

### 2. There is no basis for personal jurisdiction over FOL with respect to Core-Mark Contract.

There is no basis for asserting personal jurisdiction over FOL with respect to the claims arising under the Core-Mark Contract because there is no allegation that the Core-Mark Contract has any connection to Illinois or that this claim arises out of FOL's unalleged contacts with Illinois. Indeed, it would be unreasonable to require FOL to litigate claims arising out of the Core-Mark Contract because it is not reasonably foreseeable that FOL would be haled to court in Illinois by a Delaware corporation (Core-Mark International, Inc), with its principal places of business in Virginia and Texas, that employs a California choice of law clause in its contracts. (Ex. A). It is entirely fortuitous that Plaintiff PFG acquired both Eby-Brown and Core-Mark, not voluntary or reasonably foreseeable. *Hyperquest*, 627 F. Supp. 2d at 894 (the "purposefully avails himself of the subject form" requirement of due process "ensures that jurisdiction is not based on random or fortuitous contacts with the forum state, but is based on voluntariness and foreseeability.")

At bottom, Plaintiff PFG is attempting to bootstrap its subsidiary's forum selection clause in one contract to force FOL to litigate claims entirely unrelated to the State of Illinois arising out of an entirely different subsidiary's contract. By improperly asserting that it is entitled to bring its subsidiaries' claims in its own name, Plaintiff PDF has overlooked that this Court does not have personal jurisdiction over FOL with respect to the claims arising out of the Core-Mark Contract.

### V. CONCLUSION

The rules require all claims to be prosecuted by the real party in interest. By its own allegations, Core-Mark and Eby-Brown continue to exist, and the conclusion that Plaintiff PFG acquired their accounts receivable is incorrect and belied by Plaintiff's own allegation. And even if Plaintiff PFG has those rights, it has failed to allege the breach of an actual and existing contractual term that FOL agreed to. Moreover, Plaintiff PFG must make out a prima

14

facie case that there is personal jurisdiction over FOL, and the forum selection clause in the Eby-Brown Contract is insufficient to support personal jurisdiction because the claims at issue do not arise out of the limited scope of that clause.

WHEREFORE, Defendant Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville Inc. respectfully requests that the Court dismiss this action without prejudice.

Dated: October 10, 2023

Respectfully submitted,

Vedra Law LLC

/s/ Daniel J. Vedra
Daniel J. Vedra
**Attorneys for Defendant**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date first written above the foregoing was served by e-mail on the attorneys for all parties of record.

/s/Daniel J. Vedra